### UNITED STATES v. HARDEN and others.

*(District Court, W. D. North Carolina.*   November Term, 1881.)

1. CRIMINAL PROCEDURE—ARREST AND REMOVAL OF OFFENDERS FOR TRIAL.

Section 1014, Rev., St. in conferring criminal jurisdiction on commissioners appointed by the circuit courts, declares that proceedings before them shall be agreeably "to the usual mode of process" in the state where they are appointed; from which it may be inferred that it was the intention of congress to assimilate all proceedings for holding persons accused of crime to answer before a court of the United States, to the proceedings had for similar purposes by the laws of the state where such court is held.

2. COURT COMMISSIONERS—AUTHORITY TO COMMIT.

The commissioners have authority under the state statutes to commit defendants to county jails. The *mittimus* must be directed to the marshal, commanding him to convey the prisoner into the custody of the jailer, and it must also direct the jailer to receive the prisoner and keep him in close custody until discharged or taken from his custody by some proper process of law. Commissioners have similar powers in United States cases as justices of the peace have in state cases.

3. AUTHORITY OF MARSHAL.

The commitment of the prisoner to the county jail is not an absolute commitment, as the marshal can take the prisoner out of the custody of the jailer when it becomes necessary for him to complete the service by *capias* by producing the body of the prisoner at the ensuing term of court.

4. SAME—ORDER OF COURT OR DISTRICT ATTORNEY.

Section 1030, Rev. St., directs that "no writ is necessary to bring into court any prisoner or person in custody, or for remanding him from the court into custody, but the same shall be done on the order of the court or district attorney."

5. MARSHAL—POWERS DEFINED.

Section 788, Rev. St., provides that marshals in each state, in executing the laws of the United States, shall have the same powers as sheriffs in executing the laws of the state. The proper practice in the execution of their powers suggested.

DICK, D. J.   In this case the jailer of this county informs the court that he has in his custody the defendants, who were delivered to him by the marshal without any warrant of commitment, and he requests the court to make an order authorizing him to keep said defendants in his prison.

The marshal informs the court that said prisoners were under proper warrants committed to jail in Henderson county for the want of bail required by a commissioner after a preliminary examination before him; and without any warrant they had been transported to this county for trial in this court.   The marshal requests instructions as to how he shall act in such cases, as they are of frequent occurrence, and he never has a warrant authorizing transportation, but he has always regarded it as his duty to have such prisoners in court for trial.

As it is important that there should be connection, uniformity, and regularity in all criminal proceedings, I deem it proper to deliver a written opinion upon the questions presented by the jailer and the marshal in this case, and also upon some other subjects which have been called to my attention by United States commissioners.   In doing so I will briefly state some of the powers and duties of commissioners as examining and committing magistrates.   The circuit court is authorized by statute to appoint as many commissioners in the district as it may deem necessary; and when so appointed they should exercise the powers which are or may be expressly conferred upon them by law.   They are not strictly officers of the circuit court, but exercise somewhat independent powers.   They may be controlled by the court by general rules and by the mandatory writs by which courts of superior jurisdiction can control the action of courts and officers of inferior jurisdiction and powers.   The forms and mode of procedure before commissioners are not expressly marked out and defined in any statute of the United States.

Section 1014, Rev. St., in conferring criminal jurisdiction upon such officers, declares that proceedings before them shall be agreeably "to the usual mode of process" in the state where they are appointed.   We may well infer that it was the intention of congress to assimilate all proceedings for holding persons accused of crime to answer before a court of the United States to the proceedings had for similar purposes by the laws of the state where such court is held. We must therefore look to the laws of this state to see what powers and duties are imposed upon justices of the peace, and what are the

forms and modes of proceeding used by them as examining and committing magistrates.

Since the adoption of the present state constitution various statutes have been enacted which have enumerated with great particularity and precision the powers and duties of justices of the peace both in civil and criminal cases. The old system has been revised, amended, and greatly improved both by the legislature and the decisions of the supreme court, so that now there is scarcely ever any occasion to refer to the old English statutes and decided cases for information and guidance upon the subject. But as courts of justices of the peace had their origin in the common law, questions of "new impression" may still arise, in the determination of which we may have to refer to that bountiful source of legal knowledge and wisdom.

The laws of this state impose upon justices of the peace many important duties, and confer upon them extensive powers for the purpose of preserving the good order of society, by suppressing disturbances, and bringing violators of the criminal law to speedy justice. They are conservators of the peace, and when a felony or breach of the peace is committed in their presence they may issue a warrant of arrest without any previous affidavit, or they may verbally order the offender to be taken into custody. If a crime has been committed out of their presence they must issue a warrant, founded upon an affidavit of some credible person, showing probable cause for believing that the crime alleged has been committed by the person charged. When an alleged offender is brought before a justice of the peace for examination, he is entitled to have a fair and full investigation of the matters charged in the warrant, and the justice must advise him of his legal rights on examination, and allow him a reasonable time to summon witnesses, and consult with and employ counsel to aid him in his defence. Bat. Rev. Ch. 33.

These imperative duties necessarily confer upon the magistrate the power of continuance to a future day. The rights and privileges expressly conferred by law upon a defendant would be of little benefit if he cannot give bail during the continuance of his case, for if he is committed to prison he will not have convenient opportunity of preparing his defence. I believe that the right of thus being relieved from imprisonment when arrested, in a bailable case, is a right which cannot lawfully be denied when an examination is properly continued to a future day.

There is no statute in this state which expressly confers upon a magistrate the power to take bail for appearance before him at a future day, but from the regard which the law has for the liberty of the citizen, and the "reason of the thing," I believe he has such power. I am fully aware of the principle of law that the powers of courts of limited jurisdiction cannot be *extended* by implication, but when imperative duties are imposed and certain express powers are conferred upon such courts by law, they can properly use the auxiliary means and methods necessary to perform such duties and fully exercise such powers, if such means and methods are according to the course and practice of courts of common law in administering ordinary and substantial justice. This course is certainly allowable in courts whose powers and forms of procedure originated in the common law. Such powers have always been exercised by examining magistrates in this state, and have never been denied by the supreme court. They were claimed and exercised by Chief Justice Marshall on the preliminary examination of Burr.

I am inclined to believe that when bail is taken in such cases by justices of the peace, it should be by bond in the nature of a recognizance, where the principal and sureties sign their names, as courts of justices of the peace are not courts of record, authorized to take acknowledgment of recognizances for future appearance before them. If a defendant should make default I have not formed a decided opinion as to the proper manner of enforcing the forfeiture, and I am not aware of any decision of the supreme court on the subject. Although courts of justices of the peace are not in matters of this kind strictly courts of record, judicial proceedings before them resemble records in the conclusiveness of their effects, but they do not conclusively prove themselves; yet when proved they have the power and effect of judgments of courts of record. *Reeves* v. *Davis*, 80 N. C. 209.

Justices of the peace are required by law to keep dockets and enter a summary of their proceedings therein, and it seems to me that any judgment entered by them upon a bond which they had the power to take in the name of the state, after proceeding in conformity with the course and practice of courts of record in such matters, would be a valid judgment and could be enforced.

If an examination before a justice of the peace is continued to a future day, the officer having the defendant in custody has no power to commit him to prison without a *mittimus* from the justice, and the officer cannot certainly be required to keep a prisoner for a long time in his own personal custody.

In *State* v. *James*, 80 N. C. 370, it is decided that a verbal order of a justice. of the peace sending a prisoner to jail, whether made before or after the examination on a warrant, is not a sufficient authority to the officer to whom such order is given. If a defendant, on a continuance, fails to give the bond required, then he may be committed to prison for such failure, but the examination must be had in a very short time, unless postponed at the request of the prisoner. I feel sure that a magistrate has no right to commit to prison a defendant before time for examination, when the defendant is ready to give bail in a bailable case, and when no sufficient cause of commitment judicially appears, and when the law requires every *mittimus* to show on its face a good cause of commitment.

If, then, a defendant, on an examination before a justice of the peace on a charge of crime, is entitled to have time to make preparation for a full and fair investigation, and the right to give bail for an appearance at a future day, the bail-bond thus given must be valid and enforceable, if there should not be a compliance with the condition of such bond. I deem it proper to have considered thus far some of the powers and duties of justices of the peace in criminal matters in this state, as commissioners are required to exercise many of these powers in performing their duties in enforcing the criminal laws of the United States, and such questions have been brought to my attention by the marshal and commissioners in the course of official duty.

United States commissioners are not conservators of the peace and have no control of police regulations in their districts except where express powers are conferred by a statute of the United States. Their powers and duties in criminal matters are not, therefore, as extensive as those of justices of the peace, but are confined to those which they must necessarily exercise as examining and committing magistrates in enforcing the criminal laws of the United States, and within this limit of jurisdiction they must conform, as near as may be, to the forms and modes of procedure required by law of justices of the peace. They are not prosecuting officers, but exercise important judicial functions in passing upon questions involving the rights of the government and the liberty of the citizen. The government has appointed proper ministerial officers, and imposed upon them the duties of making diligent inquiry as to violations of law and bringing offenders to justice.

I have heretofore given instructions to commissioners upon this subject by rules of court, and I will now only incidentally refer to matters embraced in such instructions. Some of the powers and

duties of commissioners have been stated in an opinion in the *Case of Nicholas Ebbs,* delivered at this term, (10 FED. REP. 369,) and I deem it unnecessary to restate them in this opinion, except when closely connected with other matters now under consideration.

Commissioners have authority to commit defendants to county jails, as there is a state statute which provides:

"That when a prisoner shall be committed to the keeper of any jail in the state by the authority of the United States, such keeper shall receive the prisoner and commit him accordingly; and every keeper of a jail refusing or neglecting to take possession of a prisoner delivered to him by the authority aforesaid, shall be subject to the same penalties as for neglect or refusal to commit any prisoner delivered to him under the authority of the state." Bat. Rev. 695.

The *mittimus* must be directed to the marshal commanding him to convey the prisoner into the custody of the jailer, and it must also direct and command the jailer to receive the prisoner and keep him in close custody until discharged, or taken from his custody by some proper process of law. The marshal must deliver a copy of such *mittimus* to the jailer as his authority to hold the prisoner, and the original warrant, with due entry of service, must be returned to the proper officer.

A jailer ought never to receive a prisoner into his custody without some written authority to detain him, issued by a person having power to grant such authority, except under the order of a court in session. When the marshal or his deputies have arrested a person, and there is some urgent necessity for committing him to jail, they ought to furnish a copy of the warrant to the jailer, and a written statement of the causes which induce the necessity for such commitment. Where the marshal or his deputy arrests a defendant on a *capias* from a court of record, he has power to take a recognizance of bail as sheriffs can do, and if the defendant fails to give bail he may commit him to a jailer, but he ought to give the jailer a written statement of the authority under which he makes such commitment.

This is not an absolute commitment, as the marshal can take the prisoner out of the custody of the jailer when it becomes necessary for him to complete the service of the *capias* by producing the body of the prisoner at the ensuing term of court.

In this state the powers and duties of a justice of the peace are generally confined to his county of residence, and his warrants can only run within such limits. He may issue a warrant to arrest a person in his county for an offence committed in another county, and

make examination of the matter, and may hold to bail or commit the prisoner to the jail of his own county or to the jail of the county in which the offence was committed. If he commits to the jail of his own county, I am inclined to think that his power ceases, and he cannot afterwards issue a warrant to transport such prisoner to another county for trial. This transportation can only properly be done by a writ of *habeas corpus* issued by a judge of a court of superior jurisdiction.

In England it was provided by the *habeas corpus* act that if any subject should be committed to any prison, or in custody of any officer, for any supposed criminal matter, he should not be removed from such custody into the custody of any other officer unless it be by *habeas corpus* or some other legal writ. 1 Chit. C. L. 108.

I believe, however, that the general practice in this state is that the sheriff or jailer, having a prisoner in custody, conveys him to the proper county for trial, upon the request of the prosecuting officer, without being required so to do by writ of *habeas corpus*. The writ of *habeas corpus* especially provided for in the statutes of this state and of the United States is the high prerogative writ of right granted upon the application of a person illegally imprisoned or in any way restrained of his liberty. We must look to the common law for guidance in the use of the ancillary writ of *habeas corpus* to remove a prisoner to take his trial in the county where the offence was committed. Power to award such writ is conferred in general terms by statute upon courts of the United States.

The powers and duties of a commissioner are co-extensive with the limits of the judicial district in which he is appointed, and he may in the first instance commit a prisoner to the jailer of the county in which the United States court is held, but I think it best for him to commit to the jailer of the county of residence, that the prisoner may have convenient opportunity of procuring sureties or bail. If the commitment be to the last-mentioned jail without any qualification, the commissioner has no further control over the prisoner except to admit him to bail. Under a statute of this state justices of the peace have power to let to bail persons committed to prison charged with crime in all cases where the punishment is not capital; and the recognizance taken must be filed with the clerk of the court of trial. Bat. Rev. c. 33, § 38. Commissioners have similar powers in United States cases.

When a prisoner gives notice that he is prepared and desires to give bail, a commissioner is not required by law to go to the jail to

accept such bail, but he may issue a warrant to the marshal or his deputy to bring the prisoner before him at some convenient place for the purpose of performing the legal duty of accepting bail. There is no express power conferred by statute to issue such warrant, but the power arises by necessary implication. It may be laid down as a general rule that where the law imposes upon a magistrate any duty, or confers upon him power to act in any matter, by implication the power is conferred to issue his warrants to enable him to do that duty and fully exercise that power. A commissioner has no power to commit a defendant to prison, or take him out of prison, except by a written warrant for that purpose.

Section 1030, Rev. St., directs that "no writ is necessary to bring into court any prisoner or person in custody, or for remanding him from the court into custody, but the same shall be done on the order of the court or district attorney." From this grant of express power it seems that in the opinion of congress it did not exist as an implied power, and as the power is only granted to the court and district attorney, the statute may be regarded as restrictive, and intended to exclude all officers of the government not mentioned. Even without this constructive prohibition, commissioners in this state cannot by verbal order commit to prison, as the law requires justices of the peace to commit only by a written *mittimus* setting forth the cause of commitment.

When there is an order of commitment to a county jailer, and the marshal has executed the *mittimus,* he has no further control over the prisoner, and is not responsible for an escape from prison. 9 Cranch, 76. "For certain purposes and to certain intents the state jail, lawfully used by the United States, may be deemed to be the jail of the United States, and that keeper to be the keeper of the United States." Id. Section 788, Rev. St., provides that marshals in each state, in executing the laws of the United States, shall have the same powers as sheriffs in executing the laws of the state.

I believe that marshals in this state have usually adopted the practice of the sheriff in removing prisoners to the proper place of trial without applying to a judge for a writ of *habeas corpus.*

I regard this course as an unsafe practice, as an officer in transporting a prisoner ought always to be under the authority and protection of the law by having in his possession due process of law.

I think that the inconvenience of applying to a judge for a writ of *habeas corpus* can be easily obviated by a change in the form of the *mittimus* generally used by commissioners. They can direct the mar-

.shal to deliver the prisoner to the jailer of the county of residence, and if bail is not given before the ensuing trial term of the court, then he shall take the prisoner and deliver him to the jailer of the county in which such court is held. I think the first temporary commitment is allowable, as it is for the benefit of the prisoner, and in no way savors of oppression. Such a *mittimus* will afford authority and protection to the marshal in transporting to the place of trial.

As the marshal in this case followed the uniform practice of state sheriffs in transporting prisoners, I think his action is not censurable.

I have directed the clerk of this court to enter of record an order requiring the jailer of this county to keep the prisoners in his jail until they are discharged according to law.