In re ACKER.

(Circuit Court, D. Montana. August 30, 1894.)

No. 279.

1. CONTEMPT—PUNISHMENT—CONFINEMENT WITHOUT EXAMINATION.
The U. S. circuit court made an order directing a United States marshal to take into his service as many deputies as should be required to afford all necessary protection to the receivers of the N. P. R. Co., appointed by said court, and to the property in their hands, and to attach and bring before the court any persons wrongfully interfering with such property, to show cause why they should not be punished for contempt. Pursuant to said order, a deputy marshal arrested one A., who was confined, under such arrest, for more than a month, without being taken before any magistrate or examined or held to bail. *Held*, upon habeas corpus seeking A.'s discharge from such confinement, that his detention, without examination and regular commitment, was illegal, and he should be discharged.

2. SAME—CLASSIFICATION AS A CRIMINAL OFFENSE.

Contempt of a court of the United States, if classified at all as a criminal offense, must be designated as a misdemeanor, and not as a felony.

3. SAME—WHO MAY COMMIT.

In order that a person may be guilty of contempt of court in interfering intentionally with the possession by a receiver, appointed by the court, of the property in his charge, it is not necessary that such person should be an officer of the court or an employé of the receiver.

4. MARSHALS—RIGHT TO ARREST WITHOUT WARRANT.

Under section 788, Rev. St., a United States marshal, in executing the laws of the United States, has the same right to arrest without warrant as the sheriffs of the state within which is situated the district for which the marshal acts.

This was a petition by W. E. Acker for a writ of habeas corpus, alleging that the petitioner was illegally restrained of his liberty by the marshal of the district of Montana.

David B. Carpenter, for petitioner.

Preston H. Leslie, U. S. Dist. Atty., for respondent.

KNOWLES, District Judge. In this cause the petitioner, W. E. Acker, was arrested by a deputy United States marshal upon the charge of contempt of this court, committed in interfering with the receivers of the Northern Pacific Railroad Company in the management of the property of said company held by said receivers by virtue of an order of the above circuit court. By affidavits filed, the contempt was charged to have been committed by intimidating and seeking by means of certain statements to induce certain employés of the said receivers to desist from working therefor. Some time in the month of November, 1893, the above court appointed Thomas F. Oakes and others receivers of all the property of said the Northern Pacific Railroad in Montana, and authorized and required of them that they operate the railroad belonging to said company in this district. Upon the 30th day of June, 1894, the above court, upon certain representations made to it by the said receivers, showing a necessity therefor, made the following order:

"Now, therefore, in consideration of the premises, it is hereby ordered that the United States marshal within and for the district of Montana take into his service a sufficient number of deputies for that purpose, and he is hereby directed and required to furnish and afford all necessary protection to the receivers appointed by this court in the above-entitled action to enable them to manage and operate the said Northern Pacific Railroad; and the said marshal is hereby directed and required to take from the possession of all persons now unlawfully holding the same such portion of the train equipment of the said road, such telegraph offices or other portions of the property of the said Northern Pacific Company, to which the receivers are entitled to the possession, and to restore the possession thereof to the said receivers; and he is further directed and required to attach and bring before this court any and all persons who shall wrongfully and unlawfully or in any manner interfere with the possession, management, control, or operation of said railroad and its equipment by the said receivers, to show cause, if any they have, why they should not be punished as for contempt of this court for wrongfully interfering therewith."

Through said receivers, the above court was in the possession, or entitled to the possession, of all the railroad property of said company in Montana. The marshal is the executive officer of the court;

and, when an emergency is presented requiring such action, the court can call upon said officer to preserve in the hands of the receivers, appointed by the court, the property intrusted to them, and to insure to them its management and operation. Out of necessity, the court must have this right to call upon its chief executive officer. Many federal courts within the last few months have exercised this right throughout different portions of the United States. Said railroad, by its charter, is required to transport the military stores and mails of the national government, and it seemed from facts presented to the court that all effort the court was capable of making should be made to the end that the charter of the company should not become void, and that it should be operated to the end that it might be so used. The above order, so far as it directed the marshal to arrest all persons who might be guilty of contempt in interfering with the said receivers in the possession and management of said property, was not considered as a warrant of arrest. If it could be so classed, it would be void in not naming the person to be arrested. It will be noticed that this order was not to arrest persons who previous thereto had committed any offense, but was intended for future guidance. It was then thought that said officer might have this authority to arrest any one who should interfere with the said rights of the said receivers, and which rights he was ordered to maintain without any such order, and that this order only pointed out the legal duty of the officer that existed in the absence of any such order. About the only power provided by law for enforcing the other parts of the order to preserve the possession and rights of said receivers in said railroad property was this right to arrest for contempt. He could not arrest under the present state of the law for a breach of the peace or an assault and battery. Without authority to act in some way, if necessity required, the first part of the order would be useless.

In the case of New Orleans v. Steamship Co., 20 Wall. 387, the supreme court said: "Contempt of court is a specific criminal offense. The imposition of a fine was a judgment in a criminal case." This was said in a case when the mayor of New Orleans, Clark, was under a rule ordered to show cause why he should not be punished for contempt, and was punished by a fine. The same language is used in Re Swan, 150 U. S. 637, 652, 14 Sup. Ct. 225. What class of criminal offenses contempt belongs to is nowhere, I think, defined. It may be punished by fine or imprisonment at the discretion of the court. And there is no limit placed to the extent of either. It is proper to say, however, that courts have not been disposed to be arbitrary and unreasonable in inflicting punishment in such cases. In some cases it would seem that contempt should not be classed as a criminal offense. In cases where a person is imprisoned in order to compel the submission of a party to a decree in equity, it would seem that the power to punish for contempt was assimilated to a civil remedy. The case under consideration, however, would come under the class denominated as a "criminal offense." The right of an officer to arrest in criminal cases varies with the nature of the

offense. In case of felony the officer may arrest after the commission of the offense, as well as at the time thereof, without a warrant; but in cases of a misdemeanor, except in certain cases, and where the statute authorizes it, he cannot arrest without a warrant after the offense has been committed, while he has full power at the time of the commission thereof to arrest without warrant. This appears to have been the common-law rule. It was contended in this case that the fourth amendment to the constitution of the United States prohibited a federal officer from arresting any one without a warrant. The inspection of the language of that amendment will show that such should not be its interpretation. It reads as follows:

"The right of the people to be secure in their persons, homes, papers and effects against unreasonable searches and seizure shall not be violated, and no warrant shall issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

To fully understand the meaning of this clause, quite an extensive consideration of the provisions of the common law pertaining to individual rights would have to be examined. In the main, this provision makes a part of our national constitution well-known provisions of the common law. But these common-law provisions never established the rule that no one could be arrested for a criminal offense without a warrant. Such was not the case. It is plain from this provision that, when a warrant is issued to arrest a person, it must be upon probable cause, and the person to be arrested thereunder described therein.

That the force of this provision contended for was held not to be correct in the case of Rohan v. Sawin, 5 Cush. 281. Archb. Cr. Prac. & Pl. 97.

In considering the character of the criminal offense to which contempt belongs, as to whether a misdemeanor or a felony, we have no guide at common law. But it is an established rule under federal criminal procedure that no offense against the laws of the United States is a felony, unless especially declared to be such by statute. The offense in this case, then, cannot be declared a felony, and, if it is to be classified at all, must be designated as a misdemeanor.

It was also urged that the practice that pertained to the Code of Criminal Practice of the state of Montana in regard to the arrest of offenders should prevail. Except where there is some special statute, the criminal practice of the state should not prevail, but the practice in the federal courts where there is no federal statute should be assimilated to the practice at common law. U. S. v. Block, 4 Sawy. 211, Fed. Cas. No. 14,609.

It was suggested in the hearing that section 1014 of the Revised Statutes adopted the practice of the state courts in this matter of arrest. The part of said section pertaining to the question in hand is as follows:

"For any crime or offense against the United States, the offender may by any justice or judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge of a supreme or superior court,

chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate of any state where he may be found and agreeably to the usual mode of process against offenders in such states, and at the expense of the United States be arrested, imprisoned or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense."

It would appear from the language of this statute that it applied only to the officers named, and did not apply to United States marshals.

In the case of U. S. v. Horton, 2 Dill. 94, Fed. Cas. No. 15,393, says that to the above section we must resort to ascertain the powers of commissioners in respect to arrest, imprisonment, and bail of offenders against the laws of the United States.

In the case of U. S. v. Harden, 10 Fed. 802, the language of the court is similar to that in the previous case cited above.

In the case of U. S. v. Rundlett, 2 Curt. 41, Fed. Cas. No. 16,208, Mr. Justice Curtis said:

"My opinion is that it was the intention of congress by these words, 'agreeable to the usual mode of process against offenders in such state,' to assimilate all proceedings for holding accused persons to answer before a court of the United States to proceedings had for similar purposes by the laws of the state when the proceedings should take place, and as a necessary consequence that the commissioners have power to order a recognizance to be given to appear before them in these states where justices of the peace or other examining magistrate, acting under the laws of the state, have such powers."

And Judge Dillon, after quoting this in U. S. v. Horton, supra, adds:

"The prisoner is not only to be arrested and imprisoned, but bailed, agreeably to the usual mode of process in the state."

It may be that the learned judge in the case last cited intended to hold that the laws of the state in making arrests should apply. Of this I am not entirely certain. There is a noted lack of authority in the federal decisions in regard to arrests to be made by the United States marshal.

There is another provision of the statute law of the United States which would seem to me to have a bearing upon the question under consideration; namely, section 788 of Revised Statutes:

"The marshals and their deputies shall have in each state the same powers in executing the laws of the United States as the sheriffs and their deputies in such state may have by law in executing the laws thereof."

In turning to the statutes of Montana, we find section 66, p. 417, Comp. St. Mont.:

"An officer having authority to make arrests shall arrest a person without a warrant: First. When a person is attempting or has committed a public offense. Second. * * * Third. Where he has reasonable grounds to believe that a person has committed an offense, and that he may escape or attempt to escape before he can be arrested by a warrant issued by some proper officer."

The deputy marshal who arrested the petitioner, considering this provision of the statute applies to arrests (which I think it does), had the right to arrest the defendant if he had committed an offense against the laws of the United States, or if there was reasonable

ground to believe he had committed such an offense, and that he might escape before he could be arrested by a warrant issued by some proper officer.

In considering these matters, we are to look to the evidence presented. It is contended that the petitioner could not be guilty of the crime of contempt, because he was not an employé of the receivers of the Northern Pacific Railroad Company; that, under section 725 of the Revised Statutes, a person, to be guilty of contempt, must be an officer of the court; and that an employé might be such officer. The counsel for petitioner ignores that part of said section which provides that contempt may be committed in the resistance of any officer of the court or any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the court. The circuit court appointed certain parties receivers of the property of the Northern Pacific Railroad Company, and authorized them and commanded them to operate the railroad belonging thereto. Now, it has been held by several courts that the interfering with the operation and running of said road by any person, whether an employé of said receivers or not, was a resistance to this order, and was a contempt of court. The facts in the following cases will show that this was the rule established by the courts rendering the decision of Secor v. Railway Co., 7 Biss. 513, Fed. Cas. No. 12,605; King v. Railway Co., 7 Biss. 529, Fed. Cas. No. 7,800; In Re Doolittle, 23 Fed. 544. In this last case it will be seen that the persons adjudged of contempt were the employés of another road. The cases of U. S. v. Kane, 23 Fed. 748, and In re Higgins, 27 Fed. 443, assert the same doctrine. In the case of In re Tyler, 149 U. S. 181, 13 Sup. Ct. 793, the supreme court says that any one who intentionally interferes with the possession of a receiver "necessarily commits a contempt of court, and is liable to punishment therefor." Here there is no limit as to the character of person who may commit the offense. To the same effect is In re Swan, 150 U. S. 637, 14 Sup. Ct. 225. If a person cannot intentionally interfere with the possession of property in the hands of the receiver of the court without being in contempt of said court, it would be evident that the same rule would apply to the interfering with the use and operation of such property as a railroad in the hands of a receiver. It would seem, upon consulting the authorities upon the point, a court should hardly be called upon to discuss the proposition that the rule did not apply to all persons who should intentionally violate the rights of a receiver, but only particular persons, such as employés, officers, or parties to the suit in which a receiver may be appointed. The rule claimed is not supported by statute, decisions of courts, or reason.

Next, it is urged that petitioner had no notice that the Northern Pacific Railroad Company's property was in the hands of receivers. His evidence is to this effect. But it would seem that such evidence might have been induced by the great desire of the defendant to achieve his liberty. According to his own statements, petitioner entered into a contract to labor for those very same receivers; that he traveled over the railroad operated by those receivers from St. Paul, Minn., to Missoula, Mont. According to affidavits on file, the peti-

tioner sought to induce men to quit work for these very receivers. In trying to influence these men not to go to work, it was strange that he did not learn for whom they were to work. He appears to be a man of intelligence. It is not pretended that petitioner claimed any right to influence the men named in the affidavit not to go to work for the receivers. It had been a notorious fact, published in all the newspapers on the line of the Northern Pacific Road for months, that the said road was being managed by receivers, appointed by the federal courts. Under all the circumstances, if the petitioner did not have actual notice of the fact that the said road was being operated by receivers, he must be considered as having constructive notice thereof. There are authorities to the effect that, in such a case as is here presented, it is not necessary that petitioner should have had notice of the rights of the receivers. Every man, when he does an intentional and willful act, is presumed to intend what would be the natural consequences of the act. In the note of Francis Wharton to the case of In re Doolittle, 23 Fed. 549–551, this matter is discussed. It is there maintained that a person who ignorantly resists the receivers of a court cannot justify an account of his ignorance. In a case like this, where the petitioner acted without right or the claim of right, I think this rule should be maintained in contempt cases.

It is also urged that the deputy marshal should have notified petitioner of his official character. The deputy states that he wore a badge upon his coat, and that the petitioner knew his official position. In the case of People v. Pool, 27 Cal. 573–578, the supreme court of that state held that the words "You are my prisoner" were sufficient to notify a person of the official character of the person making the arrest. More than this was done in the case at bar to notify the petitioner of the character of the person arresting him. Petitioner says in his petition that the person arresting him represented himself as being a United States deputy marshal.

I have already held in another proceeding that the facts were sufficient to justify the arrest of petitioner. From all these considerations, I am satisfied the petitioner was properly arrested.

But I am confronted with another fact. It appears that the petitioner is held under arrest, and is confined under the original arrest, which was made somewhere about the 18th day of July, 1894; that petitioner has never been taken before a committing magistrate or commissioner of this court. As we have seen already, section 1014 of the Revised Statutes gives power to certain officers (among them commissioners of the United States circuit court) to examine persons charged with offenses against the laws of the United States, and that United States marshals, by virtue of section 788 of said statutes, have the same authority in making arrests against the laws of the United States as a sheriff of the state where the arrest is made. It is contemplated by the statute law of Montana that, when any officer arrests a party for a criminal offense, he should take the prisoner before a committing magistrate, and that a complaint should be made out, in which the charge against the prisoner should be specified; and, unless the prisoner should waive examination, an ex-

amination into the character of the offense of which the accused is charged should be had, and, if the committing magistrate found that there was probable cause to believe the prisoner guilty of the offense charged, he should be committed in default of bail (which such magistrate is authorized to fix if the offense should be bailable) to the custody of the proper officer, to be held to answer the charge before the proper court. See Comp. St. Mont. pp. 415–425. It is generally the duty of any officer or person making an arrest to take the person before a magistrate having authority to examine as to the charge made against the person arrested without delay. 1 Bish. Cr. Proc. § 214. After examination, the prisoner, if held in confinement, should be held under the order or commitment of the examining officer, in accordance with the provisions in the district of Montana of the 115th section of the Compiled Statutes of Montana (page 425). The petitioner is not so held, but has been held under the original arrest for over a month, which arrest was made without warrant. It is therefore ordered that the said petitioner be, and he is hereby, discharged from arrest.