## UNITED STATES v. MARESCA et al.

(District Court, S. D. New York. February 27, 1920.)

1. **Courts** ☞55—May order officers to return property unlawfully taken for another.

Whenever an officer of the court has in his possession or under his control books or papers or other articles in which the court has an official interest, and of which any person, whether a party or not, has been unlawfully deprived, such person may petition the court for a restitution of property.

2. **District and prosecuting attorneys** ☞1—Attorneys are officers of court, who can be ordered to return papers in their possession.

Attorneys are officers of the court, so that the district attorney as such officer, and not as an officer of the United States, can be ordered by the court to return papers in his possession of which another has been unlawfully deprived.

3. **Courts** ☞55—Can order return of papers, though no prosecution is pending.

Courts can order a return of papers in the possession of their officers to a person from whom they were unlawfully taken, though no prosecution to which the papers relate is pending, or they may in their discretion remit the person to plenary suit for such papers.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. District and prosecuting attorneys ☞1—Papers will not be returned merely to prevent use in evidence against owners.**

The only ground on which a motion for return of papers in possession of the district attorney can rest is that they were unlawfully seized by an unreasonable search, in violation of Const. Amend. 4, or without due process of law, in violation of Const. Amend. 5; the possibility of their use in evidence thereby compelling the owner to give evidence against himself contrary to Const. Amend. 5, not being ground for such motion.

**5. Searches and seizures ☞7—Securing papers by fraud is not "unreasonable search or seizure."**

The unreasonable searches and seizures against which a person is protected by Const. Amend. 5, are those involving force, and that amendment does not apply where possession of a paper was obtained by fraudulent representation that it could be taken by force, if not voluntarily delivered.

**6. Criminal law ☞1023(3)—Order denying return of seized books not reviewable.**

An order denying return of papers seized from defendant in a criminal prosecution is not reviewable at the instance of defendant, since it is a mere interlocutory order.

**7. United States commissioners ☞7—Are for many purposes justices of the peace of the United States.**

United States commissioners, who under Act May 28, 1896, c. 252, succeeded to the powers and duties of commissioners of circuit courts, including the powers of arresting, imprisoning, and bailing offenders, under Rev. St. § 1014 (Comp. St. § 1674), are for many purposes, including the issuance of warrants, justices of the peace of the United States.

**8. United States commissioners ☞7—Procedure follows legal methods of state.**

In exercising the powers of a justice of the peace in respect to arresting, imprisoning, and bailing offenders, granted by Rev. St. § 1014 (Comp. St. § 1674), United States commissioners follow the usual legal methods of the states in which they sit.

**9. Searches and seizures ☞8½, New, vol. 11A Key-No. Series—Common-law method of review of issuance was by action of trespass.**

The common-law method of reviewing the action of a magistrate in issuing a search warrant was by an action of trespass; appeals from such magistrates being unknown at common law.

**10. Searches and seizures ☞8½, New, vol. 11A Key-No. Series—Certiorari will not issue to review issuance of search warrant by United States commissioners.**

Since certiorari to review the issuance of search warrant by magistrate was unknown at common law, and is not authorized by act of Congress, that method of review does not exist.

**11. United States commissioners ☞7—Issue process as part of the proceedings of the District Court.**

United States commissioners, who succeeded to the powers and duties of the commissioners of the Circuit Court, and who by tradition and general practice hold a court, issue criminal process, including search warrants, in and as part of the proceedings of the District Court.

**12. Searches and seizures ☞8½, New, vol. 11A Key-No. Series—Order of commissioner directing return of seized property is judgment of the District Court.**

An order by a United States commissioner, directing return of property seized under search warrants issued by him, is a judgment of the District Court from which the writ of error lies to the Circuit Court of Appeals.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

13. **Courts ⬤═518—District Court cannot set aside order of United States commissioner directing return of seized property.**

A District Court cannot set aside an order of the United States commissioner directing a return of property seized under his search warrant any more than one District Judge can set aside an order entered by another.

14. **Searches and seizures ⬤═3—Issuance of search warrant and its subsequent discharge are not res judicata.**

The issuance of a search warrant and its subsequent discharge by a United States commissioner are not res judicata as to the right to the warrant, but subsequent application for a similar warrant may be made to the District Judge.

15. **Criminal law ⬤═230—Committing magistrate should obey statute, unless plainly unconstitutional.**

A committing magistrate must obey the statutes, in so far as they are constitutional, and is bound to refer a charge that a statute enlarging a power to search and seize is unconstitutional to the higher courts, unless the constitutional question is extraordinarily plain.

16. **Constitutional law ⬤═48—Committing magistrate should construe statutes to avoid unconstitutionality.**

If one construction of an act enlarging the power to search and seize is plainly constitutional, and another is with difficulty reconcilable to the Constitution, the committing magistrate must incline to the former construction.

17. **Searches and seizures ⬤═3—Warrant issues only for actual probable cause.**

A warrant for search and seizure, which is allowed by the Constitution only for probable cause, issues only where there is actual probable cause, not merely a verified assertion of suspicion, and the magistrate may inquire into the truth of the affidavit offered as a basis for the warrant.

18. **United States commissioners ⬤═7—Proceedings for arrest and search warrants should follow state proceedings.**

The ascertainment of probable cause for the issuance of an arrest or search warrant is a judicial function, which under general statutes the United States commissioner should exercise in conformity with state statutes.

19. **Searches and seizures ⬤═5—In application for return of property, question is whether evidence then admitted shows cause when warrant was issued.**

On the hearing of a motion for the return of property seized under a search warrant, much latitude as to the evidence should be permitted, and the question for determination is whether, under the evidence then admitted, there existed probable cause when the warrant was issued.

20. **Searches and seizures ⬤═5—If property is claimed under right additional to warrant, return should be directed, so far as based on the warrant.**

Where, at the hearing on an application for return of property seized on search warrant, it appears that there was not probable cause for the issuance of the warrant, but the person in possession claims right to the property on some ground other than the seizure under the warrant, the order should direct the return of the goods in so far as they are held by virtue of the search warrant.

Enrico Maresca and others were indicted for conspiracy to commit an offense against the United States. On motions by the named defendant under an order to show cause why the district attorney should not return a book to the petitioning defendant, and motion under another order to show cause why an order of the commissioner direct-

ing a return of certain seized documents to a defendant should not be set aside. Both motions denied.

The indictment is for conspiracy to commit an offense against the United States, and also (in other counts) for various substantive offenses, which may loosely be described as using alcohol for unlawful purposes. Under the docket number of this indictment, and therefore prima facie in this litigation, two motions have been made and argued before me.

Motion No. 1 arises under an order to show cause signed February 6, 1920, served upon the United States attorney for this district, and requiring that official, as also George F. Anderson, United States internal revenue agent, or Daniel E. Porter, supervising revenue agent for the district of New York, to show cause why the said attorney and the said revenue agents should not "forthwith redeliver and return" a certain book to the petitioning defendant (Henry F. or Enrico) Maresca.

Motion No. 2, brought under the same case number, arises under another order to show cause, likewise signed February 6, whereby the defendant Promotion Sales Company is required to show cause why an order should not be entered "vacating [an] order of Commissioner Samuel M. Hitchcock," which order was entered February 5, 1920, entitled in this court under the caption "United States v. Promotion Sales Co., Inc."

The commissioner's order shows that on November 19, 1919, a search warrant was issued by him, under R. S. 3462 (Comp. St. § 6364), authorizing and directing G. F. Anderson, internal revenue agent, "to enter and search room 206 of the building No. 1482 Broadway, borough of Manhattan," and further authorizing said Anderson "to secure and seize all books, records, or documents pertaining to the possession or sale of nonbeverage alcohol, if the same be found on the premises."

Anderson made a return to this search warrant, setting forth that he had, pursuant thereto, seized certain books and papers, which are enumerated and described in the order. Thereupon Promotion Sales Company filed a document or pleading which "controverted the material allegations of the affidavit upon which the search warrant was issued."

The commissioner then held a hearing, and, having taken the testimony of witnesses, concluded that there was "no sufficient evidence of the existence of probable cause to support the said search warrant"; whereupon the order complained of directed "that all the books, papers, records, and documents * * *. * which were seized by virtue of the said search warrant * * * be returned forthwith to the Promotion Sales Company, Incorporated, or their duly authorized representative."

Forthwith the order to show cause in motion No. 2 was procured, and by that order it is provided that pending the decision of this motion all the books and papers which the commissioner had ordered to be returned to the Promotion Sales Company be "impounded and placed in the custody of the clerk of this court." It is understood that the clerk now has them.

Hirson & Bertini, of New York City (H. Snowden Marshall, Roger B. Wood, and John J. Curtin, all of New York City, of counsel), for petitioner.

Francis G. Caffey, U. S. Atty., and Ben A. Matthews, Asst. U. S. Atty., both of New York City.

### (1) Remarks on the Practice.

HOUGH, Circuit Judge (after stating the facts as above). Motion No. 1 is simplified by an admission in open court that the one book which is the subject of that motion is in the physical possession of the United States attorney. Therefore the motion seems to be strictly within the procedure approved in Weeks v. United States, 232 U. S. 383 and described at page 387, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R.

A. 1915B, 834, Ann. Cas. 1915C, 1177. It is a proceeding in the case whose caption is at the head of this memorandum.

Motion No. 2 cannot be procedurally a part of this case. This indictment was of course, never pending before Commissioner Hitchcock; indeed, no indictment had been found when the search warrant issued in November, 1919. The order now complained of was entered in a proceeding against the Promotion Sales Company only, and it cannot be that that order was in, or a part of, proceedings under indictment 8043 and recorded in Docket C–20, page 466.

I regard this order to show cause as an independent, original proceeding, having no recognized name, but based upon a theory of procedure which must be capable of being stated as follows: Any action or order by a United States commissioner, while discharging duties imposed upon him or permitted to him in his capacity as an examining or committing magistrate (e. g., Judicial Code, § 270 [Comp. St. § 1247]; Rev. Stat. § 1014 [Comp. St. § 1674]), may be summarily reviewed, corrected, or set aside by the District Court for the district in which the commissioner functions.

It is further noted that although the motion is in form to vacate the commissioner's order, such vacation of order would now be an idle ceremony, for the order to show cause itself in effect superseded and held for naught the commissioner's order, when it impounded the books and papers in controversy and directed their deposit with the clerk of this court. It is plainly intended that whatever becomes of the books, etc., will depend wholly on an order of this court directed to its own clerk.

This court having thus possessed itself summarily of the subject-matter of controversy, the motion of the United States attorney is in substance that it shall now proceed to adjudicate the disposition of the books after considering (1) the evidence taken before the commissioner and (2) such other evidential matter as it permits to be adduced; in other words, treat the matter either like an admiralty appeal (which is a new trial) or a case removed from a justice's to a court of record, which is a proceeding de novo.

### (2) The Law Underlying Motion No. 1.

[1] Whenever an officer of the court has in his possession or under his control books or papers, or (by parity of reasoning) any other articles in which the court has official interest, and of which any person (whether party to a pending litigation or not) has been unlawfully deprived, that person may petition the court for restitution. This I take to be an elementary principle, depending upon the inherent disciplinary power of any court of record.

[2] Attorneys are officers of the court, and the United States attorney does not by taking office escape from this species of professional discipline. Thus power to entertain this motion depends on the fact that the party proceeded against is an attorney, not that he is an official known as the United States attorney. It is further true that the right to move does not at all depend on the existence of this indictment; it might be made, were no prosecution pending.

[3] Further, it does not depend on the presence or absence of any especial kind of illegality; the petitioner may be and often is remitted to plenary suit; sometimes it is better in the exercise of discretion to proceed summarily. This especial motion asserts as the illegality complained of that certain internal revenue agents "demanded" the book in question, while informing petitioner that "they were authorized to seize and carry away any papers and documents" from No. 138 Prince street, New York City, where the book was. This is the guarded language of the petition which in form charges that the revenue agents did then "take and carry away" the book in question, but does not allege a seizure by force.

[4] Since Weeks v. United States, supra, and Flagg v. United States, 233 Fed. 481, 147 C. C. A. 367, it seems to be thought that, if the prosecutor is found in possession of any documents (especially) of evidential value that once belonged to an accused, a motion to get them back should prevail, apparently because the United States attorney ought to be prevented from using the papers in evidence in violation of the Fifth Amendment. I am not advised of any holding to that effect and fail to see how the evidence clause of that amendment can be invoked before any evidence is given.

The only ground on which this or any similar motion can rest is that the prosecutor's possession of the book or paper is the result of an "unreasonable search and/or seizure" (Fourth Amendment), or of a deprivation of property "without due process of law" (Fifth Amendment). This must always, and here does, present a question of fact.

### (3) Facts in Motion No. 1.

In my opinion the following is the truth: As above set forth, Agent Anderson had a search warrant for a room in a building other than 138 Prince street; he executed that warrant, and in so doing met (if he did not already know) Maresca. Him Anderson impressed with the latter's official station and wide general powers, and Maresca wished to propitiate so great a man. Therefore he took Anderson in his motor to 138 Prince, a place occupied by the Promotion Sales Company, against whose office the search warrant had issued.

There, without force, but under the impression that Anderson had right to take the book if resistance was made, and believing it would be better for him to give it up with a show of willingness, Maresca gave Anderson the volume in question, and the latter gave it to the United States attorney. Maresca's present opposition arises, and this motion results, from later advice of counsel.

### (4) Decision of Motion No. 1.

[5] There is as yet no authoritative decision that obtaining papers or property by fraud or guile is a violation of the Fourth Amendment. Nor, so far as I know, has any court gone quite that far in emasculating the prosecution of offenders. Detectives and the like, of course, regard their frauds as pious, and the law has used the fruits thereof time out of mind. Probably the earliest reported instance of that particular kind of fraud was Jacob's method of obtaining a blessing (Gen. xxvii, 15–29).

The true doctrine, as we are informed by Silverthorne, etc., Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. ——, is set forth in Flagg v. United States, 233 Fed. at page 483, 147 C. C. A. 367, and there the position of the court rests on the use of force—it was the force that produced an unreasonable seizure.

Here, to put it plainly, Maresca was cheated into giving up the book of Promotion Sales Company; therefore no violation of the constitutional rights under the Fourth Amendment occurred, and Motion No. 1 is denied.

## (5) Effect of This Decision.

[6] Using the word "effect" as meaning lasting or permanent influence, this decision has no effect of importance. It permits the United States attorney to keep the book, and is not reviewable (Coastwise, etc., Co. v. United States, 259 Fed. 847, 170 C. C. A. 647); but the reason why an application of this kind by a party cannot be reviewed is that the order on this decision is interlocutory, as nothing can be interlocutory that is not between the parties to the suit. Veeder v. United States, 252 Fed. 401, 164 C. C. A. 338 (certiorari refused 246 U. S. 675, 38 Sup. Ct. 428, 62 L. Ed. 933), illustrates the distinction taken by our Circuit Court of Appeals, for Veeder was a stranger, it is said, to the suit or intended suit.

Whether the decision and its distinction is right or not, it is the ruling in this circuit; wherefore, if and when this book is offered in evidence, it seems that the defendant affected can either rest on the error he will believe to exist in this "interlocutory" ruling of mine or renew his argument by appropriate objection to admission in evidence, or do both. At all events, nothing is or can be settled either by this decision or any immediate review of it.

The question whether Anderson's stratagem was an unreasonable seizure or became one (as has been claimed, though not in this instance) by the United States attorney's "ratification" of his act can be raised again and in this case. The only way I could settle it would be to grant the motion, relying on the government's inability to appeal.

That is another peculiarity of the "interlocutory" doctrine. If the motion were granted there would be no appeal for one reason; and if the prosecution failed for lack of the book as evidence, the net result would necessarily be a judgment from which the government could not appeal at all, because it would occur after the defendant had been put in jeopardy.

## (6) Motion No. 2—The Office of U. S. Commissioner.

[7] No consideration can be given to this motion without a study of the history and nature of the commissioner's office. It is strange how seldom reported cases have considered this matter, except when adjusting fees—a subject too narrow for broad study. While the title of United States commissioner is no older than the act of 1896 (29 Stat. 184), they were then created to "have the same powers and perform the same duties as are now imposed upon commissioners of the

Circuit Courts, * * * and all [existing] acts and parts of acts applicable" to the former Circuit Court commissioners (except as to appointment and fees) were specifically made applicable to United States commissioners.

Only a year earlier, in 1895, the Supreme Court had reviewed these acts in United States v. Allred, 155 U. S. 591, 15 Sup. Ct. 231, 39 L. Ed. 273, and as it is well known to the older bar that the same men continued to perform the same duties after 1896, the effect of the statute of that year may be said to be no more than a change of title and of fee scale, plus the infusion of a supervisory power on the part of the Attorney General. For the essential nature, scope, and legal relation of the office one must look farther back.

It does not seem useful to tabulate the numerous statutes giving special duties (e. g., matters of extradition) to commissioners, but their development as examining and committing magistrates is relevant to this motion. Since the Judiciary Act of 1789 (1 Stat. 91) every "justice and judge of the United States" (in the original phrase) has had the power of ordering arrests and holding the accused to prison or bail. This is the essence of magistracy, and the power to commit implies and includes the power to examine and discharge.

Considering the extent of country and the fewness of judges, the original act empowered practically every state magistrate, and especially justices of the peace, to act in holding offenders for the United States courts. The substance of this part of the old act became R. S. § 727, and is now Judicial Code, § 270 (Comp. St. § 1247).

The early files of this court contain many commitments by local justices of the peace of the state of New York, and Sandford v. Nichols, 13 Mass. 286, 7 Am. Dec. 151, shows how that system worked (or did not) in revenue cases where search warrants were needed.

It did not take long for experience to demonstrate the difficulty and inutility of the borrowed and grudgingly given services of state officials, and in 1793 (1 Stat. 334) the Circuit Courts were authorized to appoint "discreet persons learned in the law" to take bail in criminal causes.

So far as I can discover, it was from this seed that "commissioners" grew; the title was assumed, but was recognized by the act of 1817 (3 Stat. 350), which in enlarging the powers of the "discreet persons" of 1793, speaks of the "commissioners who now are or hereafter may be" appointed.

Next after the original statute of 1789 the most important Judiciary Act of the first century of the republic was the statute of 1842 (5 Stat. 516), which in its first and second sections expressly gives to the commissioners of the Circuit Courts the powers of a justice of the peace in respect of "arresting, imprisoning or bailing" offenders against laws of the United States, and the substance of this grant is now R. S. § 1014.

It follows that for many purposes, including the consideration of the powers under review on this motion, the United States commissioner is a justice of the peace of the United States.

## (7) The Procedure Before Commissioners.

[8] There is agreement that under the wording of R. S. § 1014, as well as earlier acts, the mode and manner of exercising this jurisdiction is to follow the "usual"; that is, legal methods of the state in which the commissioner sits, provided, of course, that some other method has not been imposed by Congress. United States v. Harden (D. C.) 10 Fed. 802; United States v. Martin (D. C.) 17 Fed. 150; Re Eaves (C. C.) 30 Fed. 21; United States v. Collins (D. C.) 79 Fed. 66; United States v. Beavers (D. C.) 125 Fed. 780, which last citation is a decision of this court.

These rulings are entirely consistent with the nearest approach to definition of a commissioner's status ever given (to my knowledge) by the Supreme Court, viz.: He is "an adjunct of the court, possessing independent, though subordinate, judicial powers of his own." Grin v. Shine, 187 U. S. at page 187, 23 Sup. Ct. 98, 101 (47 L. Ed. 130).

## (8) The History and Nature of a Search Warrant.

It is believed that no one has been able to supplement or controvert the assertion of Lord Camden, made in 1765 in the case of the general warrants, that search warrants had imperceptibly crept into the common law.

This I take to mean that the search had crept into the warrant, as "warrant" is the ancient common-law name for the written authority to arrest, and, by the time Lord Camden gave his historic judgment, justices of the peace had at common law authority to issue search warrants, which originally and properly were instruments authorizing both the arrest of the alleged offender and the seizure of the goods found by search in daytime on described premises, where (sub silentio) the offender would (it was hoped) be found with the goods, usually stolen. The seized goods were to be delivered to an officer of the law, for restoration to their proper owner or other lawful disposition; but on this point the old cases are inconveniently vague.

The foregoing is thought to find ample support in the text and citations of Bouvier's Law Dict., sub nom. Search Warrants; Bishop's New Crim. Proc., under the same title, and also Warrants; the historical part of Justice Bradley's opinion in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; and Lord Halsbury's Laws of England (volume 9, p. 310), where also may be found a truly amazing list of recent British statutes extending and amplifying the scanty traditional law on the subject of search warrants.

## (9) Remedies at Common Law for Illegal Search Warrants, or Illegal Acts Done under Color Thereof.

[9] In considering any matter rooted in the common law, it must be remembered that, especially on the criminal side, our most ancient system of jurisprudence knew nothing of appeals, and no effort to "ap-

peal," in our modern sense, from a justice's action would have been understood by a lawyer of days before our Revolution.

But no book of American reports is old enough to reflect a system where one judge and one jury constituted the final arbiter of fate; and it is therefore, I think, of great moment to note that the early state reports reveal no effort directly to review a justice's actions as a magistrate issuing warrants or search warrants; the sole remedy was an action of trespass, wherein the right to issue such documents was most narrowly construed and the acts of those executing them most jealously scrutinized. Of this Frisbie v. Butler, Kirby (Conn.) 213, decided in 1787, Grumon v. Raymond, 1 Conn. 40, 6 Am. Dec. 200, Sandford v. Nichols, 13 Mass. 286, 7 Am. Dec. 151, and Bell v. Clapp, 10 Johns. 263, 6 Am. Dec. 339, are sufficient and illuminating examples.

### (10) The Possible Use of Certiorari.

[10] The general right of this court to issue that writ is recognized in Re Chetwood, 165 U. S. at page 461, 17 Sup. Ct. 385, 41 L. Ed. 782; but if used, there is an implication that it goes to a tribunal, or at least an official, separate from, independent of, and in some way inferior and subordinate to, the issuing court, unless it be used, as has often been the case, as an adjunct to some other process, usually habeas corpus. Of this last Judge Lacombe's action in an extradition matter, related in Re Oteiza, 136 U. S. at page 336, 10 Sup. Ct. 1031, 34 L. Ed. 464, is a good example. There the commissioner was exercising a special statutory power, one independent, and which no court could exercise, but into which a habeas could examine, if the liberty of the citizen was denied by confinement.

That a certiorari may issue to an "inferior court" is undoubted, and the decision in White v. Wagar, 185 Ill. 195, 57 N. E. 26, 50 L. R. A. 60, goes on this ground alone, for by the law of that state it is said a justice of the peace is "a court of limited powers." But it does not follow that a certiorari must issue, and as against a magistrate exercising only the arresting and committing powers, it ought not to issue, and, unless imposed by statute, cannot issue under customary law, as is well and I think conclusively shown by Magie, J., in Farrow v. Springer, 57 N. J. Law, 353, 31 Atl. 215.

There is no statutory imposition of that remedy by Congress, and therefore, in my opinion, it does not exist in this matter.

### (11) In What Court Does a Commissioner Sit?

[11] No statute furnishes a direct reply. Undoubtedly the official when taking testimony in equity or assessing damages in admiralty, is sitting in the District Court. In my opinion, when exercising the power of issuing a warrant in extradition, he is not sitting in or holding any court, and, when considering under a special statute the status of an alleged Chinese laborer, he is holding a court of his own, which is by statute inferior to the District Court. But these illustrations do not fix his status as a federal justice of the peace without civil jurisdiction, but with committing powers, and it was as such official he was acting when the warrant to search the office of Promotion Sales

Company was issued in November, 1919—a time when no other legal proceeding (known to me) was on foot by the United States against any defendant in indictment 8043.

Farrow v. Springer, supra, sufficiently points out the identity between an arrest by warrant and a search and seizure by warrant; the two acts are but parts of the same exercise of power, and are to be tested by the same rules and in the same way. It may first be noted that Mr. Hitchcock thought he was sitting in the District Court; the very caption of the order complained of shows it. Further, examination of files, shows that his predecessors for generations have entertained similar ideas, if the form of their papers proves anything. Also he had the powers of a commissioner of the Circuit Court, a title which for 80 years certainly suggested that the holder was part of that court; and, finally, the United States has never created any other court for him to sit in, nor declared that he sat in no court. Yet, by decision and tradition, he is and must be, when acting as a committing magistrate, a judicial officer, and as such he returns all his proceedings to this court.

These considerations also lead to a denial of certiorari, for I do not need to be "made more certain" of what has been done. Are not all the written records entitled in the court in which I am now sitting? Remembering that nothing but an act of Congress can make an inferior court of the United States, that no act makes a commissioner's court, and that by tradition an examining and committing magistrate, especially a justice of the peace, holds a court, I am compelled to the conclusion that, when a commissioner issues criminal process, including a search warrant, he does it in and as part of the proceedings of the District Court.

[12] But he does the act, not by virtue of any grant of power to the court as such, but by grant directly to him, and it is the same power which is given by the same statutes, and given personally to Justices of the Supreme Court and Circuit and District Judges, each of whom may sit as magistrates, with the same and no other powers. The view that this entire matter of issuing a search warrant and then directing the return of what was seized thereunder is a District Court proceeding is confirmed by study of the nature and history of the case reported as Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338, certiorari refused 246 U. S. 675, 38 Sup. Ct. 428, 62 L. Ed. 933. There a District Judge issued the search warrant, held a hearing after seizure made, and refused to direct return of what was seized. A direct writ of error was then taken to the Circuit Court of Appeals, which reversed, whereupon the United States applied for a certiorari, challenging the right of the Circuit Court of Appeals to review—a proposition in my judgment clearly right, unless that which was reviewed and reversed was a final order or judgment of the District Court; for no grant to the Circuit Court of Appeals can be found giving it power to review orders of District Judges merely as such. They must speak for, in, and on behalf of the District Court, and it is the court's action that is reviewed.

The foregoing, with the aid of counsel, I have spelled out of the

Veeder record; there is no discussion in the reports. Just how a refusal of certiorari is to be regarded is, of course, uncertain; but I will adhere to a dictum of Judge Lacombe to the effect that such refusal means that the Supreme Court is content to let the law alone. Consequently I regard the Veeder result as a holding that an order refusing to return goods seized under a warrant is a judgment of the District Court. But if, as is clearly the case, the same and equal powers be given by statute to judges and commissioners when acting as committing magistrates, it must follow that a writ of error would lie to the Circuit Court of Appeals from Commissioner Hitchcock's order. That in this circuit such writ by either party might run afoul of the "interlocutory" theory does not affect the matter, and that any writ by the United States would be resisted as an attempted appeal in a criminal cause can furnish no reason for attempting what is practically an appeal by means of this order to show cause.

### (12) Decision on Motion No. 2.

[13] The motion is denied, the order to show cause vacated, and the clerk of court directed to return the books, etc., impounded to the person from whom he received the same. The grounds for this decision, summarily stated, are that the whole proceeding in re Promotion Sales Company's books was in the District Court by a judicial officer, subordinate, but independent, sitting as a committing magistrate, having equal power with any judge authorized to hold a District Court. I have no more power to grant this motion than I would to issue an order to show cause why an order sustaining a demurrer to an indictment entered at the same term before another judge should not be vacated and held for naught.

### (13) Effect of Decision on Motion No. 2.

[14] I have not expressed any opinion on the legal correctness of the commissioner's rulings, because I conceive myself not entitled to review them in this court. On the other hand, the issuance of a warrant and its subsequent discharge is not res adjudicata. Another warrant might be applied for, and application made to me, and I would not be debarred by absolute rule from causing arrest or seizure, where the commissioner had denied it. The power is personal, in the sense of attaching to judicial existence, as in habeas corpus, where a man may (theoretically) go from one judge to another until he has exhausted the list, and then begin over again, yet always present the same questions of law and fact. This leads to an expression of the views which will guide my own conduct as a committing magistrate in this district.

### (14) Powers of the Committing Magistrate.

[15] He must obey the statutes in so far as they are constitutional. If any statute enlarges the power to arrest or search and seize, and it is alleged that such statute infringes constitutional guaranties, he is bound by repeated decisions to refer that matter to the higher courts, unless the constitutional question be extraordinarily plain.

[16] Yet if one construction of an act is plainly harmonious with the Constitution, and another with difficulty reconcilable thereto, he must incline to the former.

[17] Since the Constitution plainly requires warrants, whether for arrest, or search and seizure, or both, to issue only upon probable cause supported by oath—the words "probable cause," though used in a statute, are to be interpreted in harmony with the meaning assignable to them in the Fourth Amendment. Therefore there must be actual probable cause, not merely a bald, though verified, assertion of suspicion, and to that end the magistrate may inquire into the truth of the affidavit offered as a basis for warrant.

[18] But the rule is general that proceedings for arrest—which include seizures under warrants—shall (in this district) be agreeable to the procedure of New York. R. S. § 3462 (Comp. St. § 6364), may be regarded as a special grant of authority; but there is nothing to take away the natural meaning of probable cause (24 Op. Attys. Gen. 585), and the ascertainment of probable cause is a judicial function, which, under the general and not inharmonious statutes, must be exercised as in New York. Therefore, even under section 3462, the procedure of New York (Code Crim. Proc. § 791, et seq.) is applicable, not perhaps because it is in the Code, but because it is declaratory of historic or common law. People v. Kempner, 208 N. Y. 16, 101 N. E. 794, 46 L. R. A. (N. S.) 970, Ann. Cas. 1914D, 169.

In this district the question whether the new and general provisions for search warrants, contained in the Espionage Act, govern warrants issued under Rev. St. § 3462, or the kindred customs, counterfeiting, and postal acts, is academic, because this recent United States statute (40 Stat. 228) is but a copy of the material portions of the New York Law. Therefore I would proceed as did Commissioner Hitchcock, though for a different reason, viz.: I deem the New York law plainly applicable, and, as it is the same as the recent federal statute, am not at present concerned with the latter's possible or probable application.

[19] When, after seizure, an application for return or other disposition is made, the question is of actual probable cause, not merely whether the original affidavit was sufficient. What is a sufficient affidavit seems to me well considered in Jones v. German, [1896] 2 Q. B. D. 418; on appeal, [1897] 1 Q. B. 374.

On the question whether there was probable cause for search and seizure, much latitude as to evidence should be permitted; and if, at time of hearing, the magistrate is then of opinion that there existed probable cause when warrant issued, he should sustain the seizure. This was the holding of Judge Manton in the Case of Gouled, 253 Fed. 770, and I agree therewith. This does not mean that knowledge gained by the very act of seizure, or from the thing seized, can be used to support a finding of probable cause.

[20] If at the hearing the prosecutor offers to show that the property obtained by the party to whom the warrant issued was as matter of fact obtained by gift, or at all events not by virtue of the warrant, the first thing to look at is the return. The person executing the

warrant is bound by his return. If some gift, or surrender, or estoppel, subsequent to return, is relied on, it is immaterial and irrelevant to proceedings under the warrant, because the magistrate is concerned with nothing but the propriety of his own act. If the party whose property was wrongfully seized gave it away, that is not the magistrate's business. Let the rightful possessor keep it, but he cannot ask the magistrate to adjudicate in his favor. If the alleged rightful possessor is the man who wrongfully executed the search warrant, his right depending on transactions after the return on the wrongful seizure, it is none the less true that such question of subsequent transfer is not before the magistrate, who should frame his order so as to direct a return of the goods, if held, or in so far as they are held, by virtue of his search warrant. Then if the claim of title, or to possession, be ill founded, all defenses based on the warrant are swept away, and the parties remitted to their common-law rights and remedies. No statute has ever tried to make the magistrate a chancellor to dispose of the res; his powers and duties are confined to his own process.

I am quite aware that this fourteenth paragraph of what I have written is not a "decision" in any sense, but I have ventured to express my personal opinion because requested so to do.